IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION

| | | |
|---|---|---|
| Brian E. Wooten, | ) | C/A No.: 1:11-705-RMG-SVH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| Michael J. Astrue, Commissioner, | ) | |
| Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This appeal from a denial of social security benefits is before the court for a Report and Recommendation ("Report") pursuant to Local Civil Rule 73.02(B)(2)(a) (D.S.C.). Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3) to obtain judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his claim for Disability Insurance Benefits ("DIB"). The two issues before the court are whether the Commissioner's findings of fact are supported by substantial evidence and whether he applied the proper legal standards. For the reasons that follow, the undersigned recommends that the Commissioner's decision be affirmed.

I.    Relevant Background

A.    Procedural History

On December 12, 2007, Plaintiff filed for Social Security Disability benefits under the Social Security Act ("the Act"), 42 U.S.C. §§ 401–433, 1381–1383c. Tr. at 107–11. In his application, he alleged his disability began on November 13, 2006. Tr. at 107. His application was denied initially and upon reconsideration. Tr. at 64–68, 71–73. On

September 11, 2008, Plaintiff had a hearing before an Administrative Law Judge ("ALJ"). Tr. at 25–61. The ALJ issued an unfavorable decision on May 10, 2010, finding that Plaintiff was not disabled within the meaning of the Act. Tr. at 8–20. Subsequently, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner for purposes of judicial review. Tr. at 1–3. Thereafter, Plaintiff brought this action seeking judicial review of the Commissioner's decision in a complaint filed on March 24, 2011. [Entry #1].

B.      Plaintiff's Background and Medical History

1.      Background

Plaintiff was 35 years old when he alleges his disability began. Tr. at 18. He graduated from high school. Tr. at 45. His past relevant work ("PRW") was as a construction worker, maintenance worker, and shop manager. Tr. at 140. Plaintiff injured his back at work in August 2005, but continued working until November 2006. Tr. at 33–34. He claimed disability at that time based on his back injury, depression, anxiety, and liver damage. Tr. at 131.

2.      Medical History

Although Plaintiff injured his back in August 2005, the earliest documented treatment in the record occurred in October 2006 when he presented to the Center for Pain Control. Tr. at 234–35. Plaintiff visited the Center for Pain Control numerous times between October 2006 and July 2007 with persistent complaints of lower back pain, hip pain, depression, and anxiety. Tr. at 209–35. Thomas Brandt, M.D. repeatedly

diagnosed Plaintiff as suffering from chronic lower lumbar pain; degenerative lumbar disc disease; possible leaky disc; and reactive depression and anxiety. *Id.* He prescribed medication and at least one nerve block injection in Plaintiff's lower spine during this time. *Id.* Dr. Brandt opined on December 21, 2006 that Plaintiff was temporarily totally disabled. Tr. at 224.

In January 2007, Plaintiff was referred to a surgeon, Artur Pacult, M.D., for advice about a surgical solution to his pain. Tr. at 240. Dr. Pacult reviewed magnetic resonance imaging (MRI) of Plaintiff's lower back, but found no abnormalities. Tr. at 241. He noted that Plaintiff reported that he was "a healthy individual who on the side does baseball coaching," but noted his activities are quite limited now because of his complaints of pain. Tr. at 240. Dr. Pacult found Plaintiff was in no acute distress and that he had good motor strength and reflexes. Tr. at 240–41. He noted some hip pain and numbness in the right lower back. Tr. at 241. Dr. Pacult did not recommend surgery and suggested Plaintiff continue with conservative treatment. *Id.*

In February 2007, Plaintiff saw Tupp Iseman, M.D., for follow-up related to abnormal liver tests. Tr. at 196–97. Dr. Iseman noted Plaintiff's statement that he had been on 24 medications for pain, but had tapered off of all of them except Duragesic and Cymbalta. Tr. at 196. Dr. Iseman suspected Plaintiff may have drug-induced hepatitis and recommended follow-up liver function tests. Tr. at 197. He noted that Plaintiff had a normal gait, and was able to move from a seated to lying position, and then sit back up without difficulty. *Id.*

In February and April 2007, Plaintiff saw Randolph Scott, M.D., a psychiatrist, with complaints of anxiety. Tr. at 192–93. Dr. Scott assessed Plaintiff with chronic pain and anxiety, and prescribed anti-anxiety medication. Tr. at 193.

In April 2007, Devin Troyer, M.D. of the Center for Pain Control evaluated Plaintiff's symptoms and diagnosed him with chronic low back pain. Tr. at 188–89. Plaintiff reported his pain was consistently a "5/10" and that his pain caused him depression. Tr. at 188. Dr. Troyer noted that Plaintiff's gait was normal, that moving and stretching Plaintiff's legs did not result in any pain, but that flexing his hip did cause "some discomfort in the low back." *Id.* Dr. Troyer assessed Plaintiff's impairment ratings (11% back/8% whole body) and opined that Plaintiff was at "maximum medical improvement." Tr. at 189. Dr. Troyer further opined that Plaintiff could not perform heavy construction or manual labor and would need to be in a work setting where he could perform sedentary to light work. *Id.* Dr. Troyer stated Plaintiff could lift up to 10 pounds, should be allowed to sit or stand as needed, and should not have to bend, crawl, or climb. *Id.*

In June 2007, Plaintiff was evaluated by rehabilitation and vocational counselor William Stewart, Ph.D. Tr. at 198–207. Dr. Stewart noted Plaintiff had been referred for evaluation by his attorney to determine Plaintiff's employability and earnings capacity. Tr. at 198. Plaintiff told Dr. Stewart that he had worked for over a year after his injury on "light duty," but that he had been told to discontinue working by his doctors due to pain and "inability to perform his job." Tr. at 200–01. He reported daily activities including

driving, preparing simple meals, walking to the mailbox, visiting relatives and watching television. Tr. at 202. Dr. Stewart opined that Plaintiff "clearly demonstrated significant concentration and attention span limitations because of his chronic pain problems," was uncomfortable sitting, and walked with a limp favoring his right leg. Tr. at 203. Plaintiff tested at a 6.4 grade level for reading and 8.0 grade level for math. *Id.* According to Dr. Stewart, these scores constituted a significant vocational weakness and limited a worker to manual/physical jobs. Tr. at 203. In dexterity testing, Dr. Stewart noted Plaintiff exhibited a slow work speed and no ability to successfully compete for, perform, and sustain sedentary or light jobs that require a fast pace/production rate work speed. Tr. at 203–04. The Beck Depression Inventory Test score suggested a severe level of depression and the Beck Anxiety Inventory score indicated a severe level of anxiety. Tr. at 204. Dr. Stewart concluded that Plaintiff was not able to perform his PRW and that his prognosis for successful vocational rehabilitation to some kind of light work or job was quite poor. Tr. at 206.

Later that month, Dr. Brandt wrote a "statement" opining that, due to Plaintiff's on-the-job accident, he would be limited to "light/sedentary work at best" and that Plaintiff's injuries and emotional problems rendered him "incapable of obtaining and maintaining employment." Tr. at 236. He filled out a checklist, stating that Plaintiff's pain was so profound that it incapacitated him, that medications and other treatments gave him only temporary relief, and that Plaintiff's medications caused drowsiness and other attention-reducing side effects. Tr. at 237–38. Dr. Brandt commented he did not

5

think Plaintiff would be able to return to gainful employment because of the complexity of his pain state. Tr. at 238.

In July 2007, Dr. Brandt assessed Plaintiff with continued lower back pain and stated that he was "totally permanently disabled." Tr. at 210. Dr. Brandt recommended Plaintiff continue his current medications and continue to exercise at home. *Id.*

The next visit documented in the record occurred in February 2008, when Brian Cline, M.D., saw Plaintiff for a follow-up visit and for a refill of his depression and anxiety medication Tr. at 246. Dr. Cline assessed Plaintiff with "chronic low back pain" and noted increased liver function tests *Id.* He referred Plaintiff back to Dr. Iseman for liver testing. Tr. at 253. Dr. Iseman opined that Plaintiff may have fatty liver disease Tr. at 253–54.

Plaintiff returned to Dr. Cline in June 2008 and reported that "[h]e ha[d] lost 17 pounds with diet and exercise" and was "feeling well." Tr. at 280. There is no further treatment documented in the record after this date.

As part of his December 2007 application for disability insurance benefits, Plaintiff's mental treatment records were reviewed by Lisa Klohn, Ph.D., in March 2008. Tr. at 255. Dr. Klohn opined that Plaintiff's depression and anxiety were mild and appeared to be secondary to his back pain. Tr. at 267. She noted that Plaintiff was doing relatively well on medications. *Id.* She further noted that statements that he could not work due to his mental status were inconsistent with Plaintiff's medical records. *Id.*

Plaintiff was also assessed by two state agency physicians, Edward Stahl, M.D. (April 2008 assessment), and Ellen Humphries, M.D. (August 2008 assessment). Tr. at 269–76, 280–88. After reviewing all of Plaintiff's medical records, both doctors assessed Plaintiff as capable of performing light work with limitations to sitting for six hours and standing or walking for six hours in a workday. Tr. at 270, 282. Both assigned postural limitations, including never climbing ladders, ropes, or scaffolds. Tr. at 271, 283. Dr. Humphries also limited Plaintiff to no crawling or exposure to hazards due to his sedative medications. Tr. at 283, 285.

C.     The Administrative Proceedings

1.     The Administrative Hearing

a.     Plaintiff's Testimony

At the hearing, Plaintiff testified he lived with his wife, a dental assistant, and two high-school-age children. Tr. at 31. He stated he served in the military for nine years, but was not currently enlisted. Tr. at 31. At the time of his back injury in 2005, Plaintiff testified he was working for the State of South Carolina and continued to work for the State on light duty in 2006. Tr. at 31, 35. He received medical retirement benefits from the State and a worker's compensation settlement. *Id.* at 33, 38.

Plaintiff testified that following his back injury, he was treated by a pain specialist and neurologist. Tr. at 36. He stated that no one recommended surgery for his back. Tr. at 36. Plaintiff also claimed to be depressed because of his inability to work or help out at home. Tr. at 37.

Plaintiff stated he had been to the Veteran's Administration hospital for treatment the week before the hearing, but did not provide medical records regarding that visit. Tr. at 28–30, 47. He stated he had not sought treatment in the last couple of years with a family doctor or any other doctor because he did not have insurance. Tr. at 38–39.

Plaintiff testified that he had to lie down two or three times during the day to relieve his pain, and that his pain restricted him from many activities at home. Tr. at 41, 48–49. The ALJ asked Plaintiff if, while he was on light duty work after his injury, he had to lie down on breaks or during his lunch. Tr. at 41. Plaintiff stated that he dealt with his pain by standing up, walking around, and stretching while on duty. *Id.* He claimed he could only sit for 15 to 20 minutes prior to having to get up and stretch or move, and could only stand and walk for 15 to 20 minutes prior to having to sit down. Tr. at 41–42. He denied that he walked for exercise. Tr. at 42. He testified to using a TENS unit prescribed by Dr. Brandt for his pain. Tr. at 42–43. He also stated he occasionally used a brace, took injections, and used a heating pad or ice for the pain. Tr. at 43. He rated his daily pain as a six to seven out of ten and stated he was never without pain. Tr. at 48.

Plaintiff stated that because of his non-alcoholic cirrhosis of the liver, he is unable to take pain medications. Tr. at 46. He testified he is tired all the time because of his liver problems. Tr. at 50.

Plaintiff testified that he is able to drive a car. Tr. at 40. He claimed he stayed at home most of the time and watched television. Tr. at 44. He stated doing laundry aggravated his back and that his wife and children do most household chores. *Id.*

b. Vocational Expert Testimony

Vocational expert ("VE") Mary Cornelius reviewed the record and testified at the hearing. Tr. at 52. The VE categorized Plaintiff's PRW as a carpenter or construction worker as heavy, semi-skilled work; as an assistant building engineer as light, skilled work; as a trade specialist or maintenance repair worker as heavy, skilled work; and as a retail store manager as light, skilled work. *Id.* The ALJ described a hypothetical individual of Plaintiff's vocational profile with restrictions that limited the hypothetical individual to unskilled, simple, routine work (due to pain and depression) at a light exertion level that afforded the ability to sit or stand to do work, and required only occasionally pushing or pulling with the right leg. Tr. at 53–54. The ALJ further restricted the hypothetical individual to no climbing of ladders, ropes, or scaffolds; no crawling or kneeling; occasional climbing of ramps and stairs, balancing, stooping, and crouching; and avoiding exposure to vibrations, dangerous machinery, heights, and large crowds in the workplace. Tr. at 54. The VE testified to occupations that matched the hypothetical: routing clerk (DOT 230.663-010), light, SVP 2 (1,981 jobs in South Carolina; 159,803 jobs nationally); garment folder (DOT 789.687-066), light, SVP 2 (3,076 jobs in South Carolina; 211,602 jobs nationally); and office helper (DOT 239.567-010), light SVP 2 (1,943 jobs in South Carolina; 169,526 jobs nationally). Tr. at 54–55.

9

The VE testified that her responses were consistent with the information provided in the DOT. *Id.*

The VE further testified that if Plaintiff had to either get in a reclining position or lie down at various, irregular times of day, he could not perform substantial, gainful work that existed in the economy. Tr. at 55. She further testified that if a worker had to miss over one day a month because of health problems, then he or she could not engage in substantial, gainful work that existed in the economy. Tr. at 56. Missing two days of work each month was considered excessive. *Id.*

Upon questioning by Plaintiff's counsel, the VE testified that if an individual was not able to perform or sustain light or sedentary work or had incapacitating pain requiring bed rest, that individual would not be capable of successful, gainful employment. Tr. at 58–59.

2.      The ALJ's Findings

In his May 10, 2010 decision, the ALJ made the following findings of fact and conclusions of law:

1.      The claimant meets the insured status requirements of the Social Security Act through June 30, 2012.
2.      The claimant has not engaged in substantial gainful activity since November 13, 2006, the alleged onset date (20 CFR 404.1571 *et seq.*).
3.      The claimant has the following severe impairments: work injury to his back, affective disorder and generalized anxiety disorder (20 CFR 404.1520(c)).
4.      The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5.      After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform simple, routine, repetitive unskilled light work activity where he can avoid large crowds in the workplace. He requires a sit/stand option. He can occasionally push/pull with his right leg. He can occasionally stoop, crouch, balance and climb stairs or ramps. He should do no kneeling, crawling or climbing of ladders or scaffolds. He needs to avoid exposure to hazards such as heights, vibration and dangerous machinery. If someone can do light work, we determine he or she can also perform sedentary work.

6.      The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7.      The claimant was born on February 6, 1971 and was 35 years old, which is defined as a younger individual age 18–49, on the alleged disability onset date (20 CFR 404.1563).

8.      The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9.      Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.      Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

11.      The claimant has not been under a disability, as defined in the Social Security Act, at any time from November 13, 2006, through the date of this decision (20 CFR 404.1520(g)).

Tr. at 8–20.

II.     Discussion

Plaintiff alleges the Commissioner erred for the following reasons:

1)      the ALJ improperly discounted the opinion of Plaintiff's treating physician, Dr. Brandt;

2)      the ALJ improperly based his credibility findings and ultimate conclusion on his observation of Plaintiff during the hearing;

3)      the ALJ improperly assessed and rejected important testimony of the vocational expert;

4)      the ALJ improperly discounted the vocational report of Dr. Stewart;

5)      the ALJ applied the wrong grid table; and

6)      the ALJ's decision was unsupported by substantial evidence and based upon significant erroneous findings.

The Commissioner counters that substantial evidence supports the ALJ's findings that Plaintiff did not meet the disability requirements of the Act.

A.      Legal Framework

1.      The Commissioner's Determination-of-Disability Process

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. § 423(a). Section 423(d)(1)(A) defines disability as:

the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting "need for efficiency" in considering disability claims). An examiner must consider the following: (1) whether the claimant is engaged

in substantial gainful activity; (2) whether he has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[1] (4) whether such impairment prevents claimant from performing PRW; and (5) whether the impairment prevents him from doing substantial gainful employment. *See* 20 C.F.R. § 404.1520. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis. If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. § 404.1520(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if he can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work. *See* 20 C.F.R. Subpart P, § 404.1520(a), (b); Social Security Ruling ("SSR") 82–62 (1982). The claimant bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5).

---

[1] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the Listed impairments, found at 20 C.F.R. part 404, subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. § 404.1525. If the medical evidence shows a claimant meets or equals all criteria of any of the Listed impairments for at least one year, he will be found disabled without further assessment. 20 C.F.R. § 404.1520(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that his impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria." 20 C.F.R. § 404.1526; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy.  To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW.  *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002).  If the Commissioner satisfies that burden, the claimant must then establish that he is unable to perform other work.  *Hall v. Harris*, 658 F.2d 260, 264–65 (4th Cir. 1981); *see generally Bowen v. Yuckert*, 482 U.S. 137, 146. n.5 (1987) (regarding burdens of proof).

2.      The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner [] made after a hearing to which he was a party."  42 U.S.C. § 405(g).  The scope of that federal court review is narrowly-tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case.  *See id.*, *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls*, 296 F.3d at 290 (*citing Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases de novo or resolve mere conflicts in the evidence."  *Vitek v. Finch*, 438 F.2d 1157, 1157–58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (citing *Smith v. Schweiker*, 795 F.2d 343, 345

(4th Cir. 1986)).   Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence.  "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005).   Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings, and that his conclusion is rational.  *See Vitek*, 438 F.2d at 1157–58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964).  If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision."  *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

B.     Analysis

1.     The ALJ Properly Evaluated the Opinions of Plaintiff's Treating Physician

Plaintiff argues the ALJ erred by failing to accord "great weight" to the opinions of Dr. Brandt that Plaintiff was totally disabled.  [Entry #16 at 9–10].  The Commissioner argues the ALJ properly discounted Dr. Brandt's opinions, particularly because the opinions were on the ultimate question of disability rather than on Plaintiff's functional limitations.  [Entry #17 at 9–10].

If a treating source's medical opinion is "well-supported and not inconsistent with the other substantial evidence in the case record, it must be given controlling weight[.]" SSR 96-2p; *see also* 20 C.F.R. § 416.927(d)(2) (providing treating source's opinion will

be given controlling weight if well-supported by medically-acceptable clinical and laboratory diagnostic techniques and inconsistent with other substantial evidence in the record); *see also Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996) (finding a physician's opinion should be accorded "significantly less weight" if it is not supported by the clinical evidence or if it is inconsistent with other substantial evidence). The Commissioner typically accords greater weight to the opinion of a claimant's treating medical sources because such sources are best able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. *See* 20 C.F.R. § 416.927(d)(2). However, "the rule does not require that the testimony be given controlling weight." *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992) (per curiam). Rather, "[c]ourts evaluate and weigh medical opinions pursuant to the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." *Johnson*, 434 F.3d at 654. The ALJ has the discretion to give less weight to the opinion of a treating physician when there is "persuasive contrary evidence." *Mastro v. Apfel*, 270 F.3d, 171, 176 (4th Cir. 2001). In undertaking review of the ALJ's treatment of a claimant's treating sources, the court focuses its review on whether the ALJ's opinion is supported by substantial evidence, because its role is not to "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Craig*, 76 F.3d at 589.

In June 2007, Dr. Brandt opined Plaintiff would be limited to "light/sedentary work at best" and that Plaintiff's injuries and emotional problems rendered him "incapable of obtaining and maintaining employment." Tr. at 236. He filled out a checklist, stating that Plaintiff's pain was so profound that it incapacitated him, that medications and other treatments gave him only temporary relief, and that Plaintiff's medications caused drowsiness and other attention-reducing side effects. Tr. at 237–38. In July 2007, Dr. Brandt assessed Plaintiff with continued lower back pain and stated that he was "totally permanently disabled." Tr. at 210.

Plaintiff contends the ALJ did not properly assess Dr. Brandt's opinions that Plaintiff was totally disabled. [Entry #16 at 10]. Opinions that a claimant is disabled or unable to work are reserved to the Commissioner and are not considered medical opinions. 20 C.F.R. § 404.1527(d). Pursuant to the regulations, the Commissioner will not give any special significance to the source of an opinion on an issue reserved to the Commissioner. *Id.* Because Dr. Brandt's purported opinions were on an issue reserved to the Commissioner, they are not entitled to any special significance.

Furthermore, to the extent Dr. Brandt's opinions addressed issues other than those reserved to the Commissioner, the ALJ properly explained his reasoning for discounting those opinions. After first properly articulating the standard for evaluating treating physician opinions, the ALJ found that although Plaintiff has some severe and functionally-limiting impairments, they are not as extreme as Plaintiff's pain doctor (Dr. Brandt) described. Tr. at 17. The ALJ based this finding on the conservative treatment

17

Plaintiff received and his observation that Dr. Brandt's opinions were not consistent with the medical treatment notes or other treating modalities. *Id.*

By reviewing Dr. Brandt's opinions regarding Plaintiff's condition and considering them in light of Plaintiff's treatment and other medical records, the ALJ did what he was required to do. He considered Dr. Brandt's opinions and found that they were inconsistent with Plaintiff's other medical records. *See Craig,* 76 F.3d at 590. The undersigned's review of the record confirms the conservative treatment noted by the ALJ. In addition, Dr. Brandt's opinion is contradicted by that of his partner, Dr. Troyer, who opined that Plaintiff was capable of performing sedentary to light work so long as he did not lift more than 10 pounds, could alternate sitting and standing as needed, and did not have to bend, crawl, or climb as part of his work activities. Tr. at 189. Consequently, the undersigned finds that the ALJ's decision to discount Dr. Brandt's opinions is supported by substantial evidence.

Based on the foregoing, the undersigned recommends affirming the Commissioner's decision on this issue.

2. The ALJ Properly Considered Plaintiff's Demeanor at the Hearing in Assessing Plaintiff's Credibility

Plaintiff argues the ALJ impermissibly relied on observations of Plaintiff at the hearing in assessing Plaintiff's credibility. [Entry #16 at 11–13]. The Commissioner counters that the ALJ's assessment was proper and that Plaintiff's argument is based on a misunderstanding of the applicable law. [Entry #17 at 10–12].

As part of his credibility analysis, the ALJ observed that Plaintiff entered and exited the hearing room without difficulty and sat through the hearing without any physical signs of discomfort. Tr. at 15–16. The ALJ further observed that Plaintiff was alert and coherent and answered all questions. Tr. at 16.

Plaintiff contends the ALJ may not rely on such observations in reaching his decision regarding Plaintiff's credibility. [Entry #16 at 13]. The Fourth Circuit has held that "[b]ecause he had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight." *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (citing *Tyler v. Weinberger*, 409 F. Supp. 776 (E.D. Va. 1976)). The cases cited by Plaintiff do not undercut this basic principle. Rather, they hold an ALJ cannot rely solely on a claimant's "well-groomed state" in finding that the claimant's personal habits have not deteriorated in a mental impairment case, *Lewis v. Bowen*, 823 F.2d 813, 816 (4th Cir. 1987); cannot rely on Plaintiff's failure to manifest pain in a case where claimant alleged only psychological impairments, *Lewis v. Weinberger*, 541 F.2d 417, 421 (4th Cir. 1976); and cannot discredit a claimant's credibility based on a failure to exhibit what the ALJ, independent of the claimant's testimony, considered to be observable manifestations of someone in pain, *Tyler v. Weinberger*, 409 F. Supp. 776, 789 (E.D. Va. 1976). In so holding, the *Tyler* court specifically noted "[i]t [is] within the Judge's discretion to draw conclusions as to the credibility of [a claimant's] representations, as to the noticeable

effects of his pain and suffering by scrutinizing those representations in light of the Judge's observations of [the claimant] from the bench." *Id.* at 789–90.

Additionally, the ALJ's observations of Plaintiff were not the sole basis for the ALJ's finding that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely credible. Tr. at 15. The ALJ also based his finding on "the paucity of the objective findings of abnormality and the lack of substantiation of the asserted degree of impairment by the clinical findings." Tr. at 16. Specifically, the ALJ noted the record did not reflect any emergency room or other hospital visits, surgical intervention, or significant adverse side effects of medication. *Id.* The ALJ also noted the evidence did not show persisting strength deficits, circulatory compromise, neurological deficits, muscle spasm, fasciculation, fibrillation, or muscle atrophy or dystrophy. *Id.* Thus, even if it were improper for the ALJ's observations to impact his credibility analysis, the ALJ's determination is supported by other substantial evidence in the record and any reliance on Plaintiff's demeanor at the hearing would be harmless error.

Because the ALJ properly relied on his observations of Plaintiff's demeanor and other substantial evidence of record in assessing Plaintiff's credibility, the undersigned recommends affirming the ALJ's credibility determination.

### 3.     The ALJ Properly Rejected Certain Testimony of the VE

Plaintiff contends the ALJ erred by improperly assessing and rejecting testimony of the VE based on hypothetical questions posed by Plaintiff's counsel. [Entry #16 at

13–14].  The Commissioner argues the ALJ properly rejected the VE's testimony in response to hypothetical questions that included limitations or restrictions not supported by the record.  [Entry #17 at 12–13].

During the VE's testimony, the ALJ first posed a hypothetical question incorporating Plaintiff's vocational profile and the limitations included in the RFC assessment.  Tr. at 53–54.  In response, the VE testified to several occupations that matched the hypothetical.  Tr. at 54–55.  Plaintiff's counsel then posed two additional hypothetical questions to the VE based upon the reports of Drs. Stewart and Brandt.  Tr. at 56–59, 198–207, 237–38.  The VE testified that with those additional limitations, the hypothetical individual would not be capable of substantial gainful employment.  Tr. at 58–59.  The VE noted, however, that the limitations on reading and math abilities presented by Plaintiff's counsel (based on Dr. Stewart's evaluation) would not change his response to the ALJ's original hypothetical in which he identified several unskilled jobs.  Tr. at 60.  The ALJ noted in his decision that he found the limitations included in the hypothetical questions posed by Plaintiff's counsel to be unsubstantiated by the medical evidence of record and not valid.  Tr. at 19.

Although Plaintiff argues the ALJ erred in not considering the VE's testimony on the additional hypothetical questions, the ALJ was not required to include limitations or restrictions in his hypothetical questions that he found were not supported by the record.  *Lee v. Sullivan*, 945 F.2d 687, 692 (4th Cir. 1991) (a requirement introduced by claimant's counsel in a question to the vocational expert "was not sustained by the

evidence, and the vocational expert's testimony in response to the question was without support in the record"); *Walker v. Bowen,* 889 F.2d 47, 50 (4th Cir. 1989) (vocational expert testimony must be based on a proper hypothetical containing limitations based on the evidence of record to be reliable). The ALJ's hypothetical question to the VE mirrored the limitations found by the ALJ in his RFC finding. As is discussed in sections II.B.1. and II.B.4. of this Report and Recommendation, the ALJ properly discounted the opinions of Drs. Stewart and Brandt in determining Plaintiff's RFC. For these reasons, the undersigned recommends a finding that the hypothetical question posed and relied upon by the ALJ set forth all of the limitations supported by the record and his rejection of the VE's additional testimony in response to questioning by Plaintiff's counsel is not reversible error.

### 4. The ALJ Properly Discounted Dr. Stewart's Report

Plaintiff next contends the ALJ erred by summarily rejecting Dr. Stewart's report and failing to analyze what effect Dr. Stewart's findings would have on Plaintiff's ability to engage in substantial gainful employment. [Entry #16 at 15–16]. The Commissioner argues the ALJ appropriately concluded Dr. Stewart's opinion was not entitled to "great weight" because it conflicted with objective medical evidence in the record and was on issues reserved to the Commissioner. [Entry #17 at 13–15]. The Commissioner also notes that Dr. Stewart is a non-physician "other source" who cannot establish the existence of a medically-determinable impairment. *Id.* at 14.

Dr. Stewart is a vocational expert who evaluated Plaintiff at Plaintiff's counsel's request in June 2007. Tr. at 198. Dr. Stewart opined that Plaintiff "clearly demonstrated significant concentration and attention span limitations because of his chronic pain problems," was uncomfortable sitting, and walked with a limp favoring his right leg. Tr. at 203. Plaintiff tested at a 6.4 grade level for reading and 8.0 grade level for math. *Id.* According to Dr. Stewart, these scores constituted a significant vocational weakness and limited a worker to manual/physical jobs. Tr. at 203. In dexterity testing, Dr. Stewart found Plaintiff exhibited a slow work speed and no ability to successfully compete for, perform, and sustain sedentary or light jobs that require a fast pace/production rate work speed. Tr. at 203–04. The Beck Depression Inventory Test score suggested a severe level of depression and the Beck Anxiety Inventory score indicated a severe level of anxiety. Tr. at 204. Dr. Stewart concluded that Plaintiff was not able to perform his PRW and that his prognosis for successful vocational rehabilitation to some kind of light work or job was quite poor. Tr. at 206.

The Social Security Regulations distinguish between opinions from "acceptable medical sources" and "other sources." *See* 20 C.F.R. §§ 404.1513(d), 416.913(d). Social Security Ruling 06–03p further discusses "other sources" as including both "medical sources who are not acceptable medical sources" and "non-medical sources." Only acceptable medical sources can establish the existence of a medically-determinable impairment, give medical opinions, and be considered treating sources whose opinions may be entitled to controlling weight. SSR 06–03p. However, medical sources who are

not acceptable medical sources may provide opinions reflecting "the source's judgment about some of the same issues addressed in medical opinions from 'acceptable medical sources,' including symptoms, diagnosis and prognosis, and what the individual can still do despite the impairment(s), and physical or mental restrictions." SSR 06–03p. Social Security Ruling 06–03p further provides:

> Although there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision, the adjudicator generally should explain the weight given to opinions from these "other sources," or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case. In addition, when an adjudicator determines that an opinion from such a source is entitled to greater weight than a medical opinion from a treating source, the adjudicator must explain the reasons in the notice of decision ....

*Id.*

Finally, the ALJs are instructed to apply the factors for evaluating the opinions of acceptable medical sources, which are listed in 20 C.F.R. §§ 404.1527(d) and 416.927(d), in evaluating the opinions from other sources with the understanding that not every factor may apply. *Id.* These factors include: (1) whether the physician has examined the claimant, (2) the treatment relationship between the physician and the claimant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, (5) whether the physician is a specialist, and (6) other factors that may support or contradict the opinion. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d).

A vocational expert does not qualify as an "acceptable medical source." 20 C.F.R. § 404.1513(c)(2). Thus, Dr. Stewart may not establish the existence of a medically-determinable impairment and the ALJ was obligated to analyze Dr. Stewart's as set forth above.

Plaintiff argues the ALJ erred in evaluating Dr. Stewart's opinion. A review of the ALJ's decision, however, reveals the ALJ explained the weight given to Dr. Stewart's opinion as he "generally should," but is not required to do. SSR 06–03p. In considering Dr. Stewart's opinion, the ALJ found the "attorney-purchased" opinion was not supported by the treatment records of the claimant contained in the record and that the level of severity of the claimant's impairments was not consistent with the overall findings of other health professionals included in the record. Tr. at 16–17. The ALJ noted Dr. Stewart had seen Plaintiff only one time and concluded Dr. Stewart's opinion was not entitled to "controlling weight or even great weight." Tr. at 17. The ALJ further stated that while he had considered Dr. Stewart's opinion, the issue of whether Plaintiff is disabled is an issue reserved to the Commissioner. *Id.* In accordance with SSR 06–03p, the ALJ's analysis addressed several of the factors used to evaluate medical source opinions including the nature of the treatment relationship, the supportability of Dr. Stewart's opinions, and the consistency of those opinions with the record.

In addition, although Plaintiff contends the ALJ did not include any assessment of what effect the results of Dr. Stewart's testing would have on Plaintiff's ability to work, the ALJ specifically asked the VE whether the academic limitations reported by Dr.

Stewart would impact Plaintiff's ability to perform the jobs identified by the VE. Tr. at 60. The VE stated the academic limitations would not impact Plaintiff's ability to perform those jobs. *Id.*

For the foregoing reasons, the undersigned does not recommend remand on this ground.

### 5. The ALJ Applied the Appropriate Grid Table

Plaintiff argues the ALJ improperly applied the Medical-Vocational Guidelines ("Grids") when he found Plaintiff had a high school education despite Dr. Stewart's testing showing Plaintiff's language skills were at grade level 6.4 and his arithmetic skills were at grade level 8. [Entry #16 at 16–17]. The Commissioner argues the ALJ properly applied the Grids because Plaintiff admitted to having a high school diploma. [Entry #17 at 16–17]. The Commissioner further argues that even if the ALJ had applied the rule for individuals with a "limited" or "marginal" education, Plaintiff still would have been found "not disabled" under the Grids. *Id.*

The ALJ may use the Grids at step five of the sequential evaluation in determining whether jobs exist that a claimant can perform, when the claimant's "impairment(s) prevents the performance of his or her vocationally relevant past work." 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00. The Grids consider a person's age, education, work experience, and RFC. *Id.*

Here, the ALJ found Plaintiff could no longer perform his PRW at step four. Tr. at 18. At step five, the ALJ found that using the Grids as a framework supported a

finding of "not disabled."  *Id.*  Plaintiff alleges the ALJ erred in this portion of his analysis when he considered Plaintiff to have a high school education, as opposed to having a "limited education."  [Entry #16 at 17].

Plaintiff's argument fails for two reasons.  First, Plaintiff testified that he had a high school diploma, Tr. at 32, and Plaintiff has cited no authority requiring an ALJ to apply the Grids based on a claimant's demonstrable skill levels.  Second, Plaintiff would have been found "not disabled" under the Grids even if the ALJ had applied Rule 202.18, which applies to individuals with a limited education.  20 C.F.R. Pt. 404, Subpt. P, App. 2, §§ 202.16–202.19.  Therefore, even if the ALJ erred in assessing Plaintiff as having a high school education, the error is harmless because it did not change the ultimate conclusion.

For these reasons, the undersigned recommends a finding that the ALJ's holding that Plaintiff had a high school education and subsequent application of the corresponding Grids does not warrant remand of this case.

### 6. The ALJ's Findings are Supported by Substantial Evidence

Plaintiff's final allegation of error is that the ALJ's decision is not supported by substantial record evidence and is based upon significant erroneous findings.  [Entry #16 at 17–19].  Plaintiff contends the ALJ erroneously stated (1) the record did not contain documentation of specialized treatment, physical therapy, or surgical intervention, and (2) the claimant has no limitations on his ability to perform activities of daily living ("ADLs") or in performing any physical activities.  *Id.* at 17–18.  Plaintiff further argues

27

the ALJ did not appropriately assess Plaintiff's credibility and points to evidence he claims contradicts the ALJ's findings.[2]  The Commissioner argues the ALJ's findings were not erroneous and that he appropriately assessed Plaintiff's credibility.  [Entry #17 at 17–19].

Plaintiff first argues the ALJ's statement regarding Plaintiff's lack of specialized treatment, physical therapy, or surgical intervention was erroneous.  [Entry #16 at 17–18].  He points to his treatment by Drs. Troyer, Scott, Iseman, and Brandt, "all specialists in their fields of medicine," as contradictory evidence.  *Id.* at 18.  The undersigned agrees with the Commissioner that Plaintiff conflates "specialized treatment, physical therapy, [and] surgical intervention," Tr. at 15, with "seeing a specialist."  There is no doubt from the record that Plaintiff did not receive physical therapy or surgical intervention.  In fact, Plaintiff testified that surgery was never recommended for his back.  Tr. at 36.  The dispute then is whether the ALJ incorrectly stated Plaintiff had never received "specialized treatment."  Plaintiff appears to argue "specialized treatment" means simply an office visit to a specialist, while the Commissioner seems to argue it means procedures targeted to a medically-identifiable impairment.  Given that the ALJ specifically noted that Dr. Brandt was a treater with the Center for Pain Control and that Dr. Iseman was a

---

[2] Plaintiff also argues the ALJ erred in concluding Plaintiff had "at least a high school education" and applying the incorrect grid table.  [Entry #16 at 19].  The court has already analyzed this argument in addressing Plaintiff's fifth allegation of error and will not revisit it again here.  Likewise, Plaintiff's argument that the opinions of Dr. Brandt and Dr. Stewart do not support the ALJ's decision, *id.*, will not be revisited because the undersigned has already addressed the ALJ's findings regarding those opinions.

28

gastroenterologist, he was aware Plaintiff had visited specialists for his conditions. Tr. at 13–14. In addition, when read in context with "physical therapy, [and] surgical intervention," the term "specialized treatment" is more likely to reference procedures than office visits. For these reasons, the undersigned concludes the ALJ's statement was not in error.

Plaintiff next contends the ALJ erroneously stated, "The claimant has no limitations on his ability to perform ADLs or in performing any physical activities." [Entry #16 at 18]. Plaintiff asserts this finding is contradicted by the ALJ's finding that Plaintiff suffers from severe impairments and the RFC assessment, which includes specific functional limitations. *Id.* While the undersigned agrees with Plaintiff that these findings are contradictory, the ALJ's erroneous statement was harmless error. The ALJ summarized Plaintiff's testimony regarding his ADLs, noted he can drive and do minimal household chores, and found Plaintiff has "no more than mild restriction" in ADL. Tr. at 11, 14–15. As Plaintiff points out, the ALJ found Plaintiff's back injury, affective disorder, and generalized anxiety disorder constituted severe impairments. Tr. at 10. The ALJ further found Plaintiff could only occasionally stoop, crouch, balance and climb stairs or ramps and should never kneel, crawl or climb ladders or scaffolds. Tr. at 11. Because these findings demonstrate the ALJ concluded Plaintiff was limited in performing physical activities despite his statement to the contrary, the undersigned recommends a finding that this error was harmless.

Plaintiff also raises a general challenge to the ALJ's credibility finding. [Entry #16 at 18]. "The determination of whether a person is disabled by pain or other symptoms is a two-step process." *Craig v. Chater*, 76 F.3d 585, 594 (4th Cir. 1996). First, a threshold determination is made as to whether objective medical evidence shows the existence of a medical impairment which could reasonably be expected to produce the symptoms alleged. *Id.* Then, the ALJ must evaluate the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work. *See* 20 C.F.R. §§ 416.929(c)(1) & 404.1529(c)(1). This evaluation must take into account not only the claimant's statements, but also "all the available evidence," including the claimant's medical history, medical signs, and laboratory findings . . . and any other evidence relevant to the severity of the impairment, such as evidence of the claimant's daily activities, specific descriptions of the pain, and any medical treatment taken to alleviate it. *Chater*, 76 F.3d at 595. Because an ALJ has the opportunity to observe the claimant's demeanor, the reviewing court should give the ALJ's credibility determination "great weight." *See Shively*, 739 F.2d at 989.

Here, the ALJ properly set out the standard he was to follow, found that Plaintiff's impairments could reasonably be expected to produce his alleged symptoms, and evaluated the evidence in assessing his credibility. Tr. at 11–16. The ALJ expressly found that Plaintiff's medically-determinable impairments could reasonably be expected to cause his alleged symptoms, but that his statements concerning the intensity, persistence and limiting effects of these symptoms were not entirely credible. Tr. at 15.

The ALJ considered Plaintiff's ADLs, his lack of treatment for pain, the lack of objective medical findings consistent with his allegations, and his lack of medication use or side effects. Tr. at 14–16. He cited Dr. Troyer's opinion that claimant could perform sedentary to light duty work, should not have to lift more than 10 pounds, should be allowed to sit and stand as needed, and should not bend, crawl, or climb as part of his work duties. Tr. at 12.

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *See Perales*, 402 U.S. at 390, 401. The undersigned recommends a finding that the ALJ's determination that the objective medical evidence did not support Plaintiff's subjective complaints is supported by substantial evidence.

For the foregoing reasons, the undersigned recommends a finding that Plaintiff's sixth allegation of error does not provide a basis for remand.

III. Conclusion and Recommendation

The court's function is not to substitute its own judgment for that of the Commissioner, but to determine whether his decision is supported as a matter of fact and law. Based on the foregoing, the undersigned recommends the Commissioner's decision be affirmed.

IT IS SO RECOMMENDED.

July 10, 2012                                    Shiva V. Hodges
Columbia, South Carolina                         United States Magistrate Judge

**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).